**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DARREN A. LUNFORD, ) | 3:08-CV-233-ECR (RAM) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. ) | |
| BRUCE BANNISTER, CHUCK ) | |
| SCARDIN, D.W. NEVEN, GARY ) | |
| GRAHAM, AND DR. WULFF, ) | |
| Defendants. ) | |

     This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

     Before the court are the parties' cross-motions for summary judgment. (Docs. #12 and #13.) Plaintiff has also moved for a temporary injunction or restraining order (Doc. #10) and Defendants have opposed (Doc. #11).

     Having read the papers, and carefully considered the arguments and the relevant legal authority, and with good cause appearing, the court recommends that Defendant's motion be granted in part and denied in part. Plaintiff's motions should be denied.

///
///
///
///
///

**BACKGROUND**

At all relevant times, Plaintiff was an inmate in custody of the Nevada Department of Corrections at High Desert State Prison. (Doc. #4 at 1[1]). Defendant Bannister is named as the Medical Director of NDOC, Defendant Scardin as the "Chief of medical fiscal services", Defendant Neven as the Warden of Operations, and Defendants Graham and Wulff as treating physicians. (*Id*. at 2-3.)

Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983 based on delayed medical care he received while at High Desert State Prison. (*Id*. at 3.) In Count I , Plaintiff alleges a fifteen-month denial of medication and an appointment with an ENT specialist that were originally prescribed on January 31, 2007. Plaintiff was seen by a specialist and received medication in May 2008. (Doc. #12 at 6.)

Liberally construing Count II of the complaint, Plaintiff alleges three deficiencies with the treatment for an old shoulder injury. First, he claims that the treatment rendered by Defendant Graham and other medical staff at the prison has been insufficient and has exacerbated his condition. Second, he alleges that he was referred to a doctor in September 2006, but that the appointment was delayed for an eighth-month period until April 2007. Finally, Plaintiff challenges the care provided by his orthopedic specialist, Defendant Wulff, because the doctor did not believe that surgery was necessary and that therapeutic exercises would be sufficient to cure the condition. Plaintiff alleges that he is in need of a magnetic resonance image (MRI) of the affected area, painkillers, and surgery. (*Id*. at 5-5(c).)

Based on these allegations, Plaintiff alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages. Defendants have moved to dismiss or for summary judgment on the basis of absolute immunity, qualified immunity, and failure to

---

[1] Page number references to the Plaintiff's complaint utilize the page numbering appearing at the bottom of the pages; all other page number references to the docket rely on the numbering generated by the electronic case filing system.

2

state a cognizable legal claim under the Eighth Amendment of the U.S. Constitution. Plaintiff moves for summary judgment on both counts of his complaint as well as for an injunction to receive additional medical treatment for both his conditions.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

Because it is necessary for the court to look beyond the pleadings, Defendants' motion will be treated as for summary judgment. Fed. R. Civ. P. 12(d). The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on the motion. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the

trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

A *pro se* complaint, however inartfully drafted, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson*, 127 S.Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). In giving liberal construction to a pro se civil rights complaint, the court is not to supply essential elements of the claim that were not initially pled. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## B. DISCUSSION

### 1. EIGHTH AMENDMENT

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a prisoner's condition could lead to further injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Examples

of conditions that are "serious" in nature include an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-1060 (9th Cir. 1992); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

If Plaintiff's needs were serious, then he must show Defendants acted with deliberate indifference to these needs. *Estelle*, 429 U.S. at 104. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989). The plaintiff should allege a purposeful act or omission by the defendant. *McGuckin*, 974 F.2d at 1060. When the plaintiff alleges a mere delay of treatment, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) (per curiam).

**i.)   ENT Condition (Count I)**

Plaintiff's claim is that he has been denied "Antivert" medication and that his referral to an ENT specialist was unduly delayed. (Doc. #12 at 5.) In response to a grievance, prison officials notified him on May 15, 2007 that the medication was not in stock at the pharmacy, that there had been an error in ordering it, and that he would receive the medication soon. (*Id.* at 12 [Response to Plaintiff's First Level Grievance].) He did not receive it. After he was transferred to a different prison in January 2008, Plaintiff was finally seen by an ENT specialist and prescribed an alternate medication in May of that year. (Doc. #12 at 6.)

After a thorough review of the record, the court concludes that Plaintiff's motion for summary judgment should be denied. There is some issue of material fact as to whether Plaintiff's ENT condition was the type of "serious medical need[]" that could give rise to an Eighth Amendment claim. *See Estelle*, 429 U.S. at 104. This is because Plaintiff's medical records do not indicate that he sought a follow-up appointment for his ear with the prison infirmary after January 31, 2007. On the other hand, Plaintiff did file a set of grievances

attempting to obtain the prescribed medication and to be seen by a specialist for his ear. (Doc. #10 at 26.) However, when the medication did not arrive, even after prison officials promised in May 2007 that it was on its way, Plaintiff did not contact the prison until February 2008. Given this substantial delay, it is disputable whether Plaintiff's condition subsided during this period. This would affect whether the harms he alleges from the delayed treatment were sufficiently "serious" to rise to a constitutional level. Additionally, it is unclear from the evidence whether the failure to provide treatment was an inadvertent failure, as discussed below. In light of these disputed material issues, Plaintiff's motion for summary judgment should be denied.

Defendants also move for summary judgment, arguing that Plaintiff has received adequate medical treatment for his ENT condition. They also argue that Plaintiff could have requested to be seen by the infirmary if he had any serious problems, and that when he was seen for his shoulder condition in April 2007, he did not complain about the ENT condition. Because he did not, they contend that the ENT condition is not sufficiently serious to warrant Eighth Amendment scrutiny. (Doc. #13 at 15-16.)

The court concludes that Defendant's motion for summary judgment should be denied. While Plaintiff has received some treatment for his ENT condition, the fact remains that it took over fourteen months for Plaintiff to receive the prescribed treatment. In fact, Plaintiff never received the Antivert medication he was originally prescribed, and instead received an alternate medication from an ENT specialist in May 2007. (Doc. #12 at 5.) The grievance record indicates that prison officials acknowledged making an error in ordering the medication, but they did not correct this problem despite having ample opportunity to do so. (*Id.*, Ex. 2, at 12.) An inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain. *Estelle*, 429 U.S. at 105. On the other hand, deliberate indifference can be found where prison officials deny or delay treatment in a wanton fashion, causing the inmate to suffer some sort of harm. *See Delker v. Maass*, 843 F.Supp. 1390, 1400 (D.Or. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)). Defendants offer

no explanation for the delay in providing treatment, and no evidence in the record sheds any light on this issue. It is therefore possible that prison officials manifested a disregard for Plaintiff's medical needs. Neither do Defendants offer any evidence that Plaintiff was not harmed as a result of this delay. Accordingly, their motion for summary judgment should be denied.

### ii.) Shoulder Injury (Count II)

Defendants move for judgment on Count II of Plaintiff's complaint on the grounds that the treatment for his shoulder injury was adequate. Defendants argue that on multiple occasions throughout 2006 and 2007, Plaintiff was prescribed pain killers, physical therapy, and a referral to an orthopedic specialist. (Doc. #13 at 14-15.) In his cross-motion for summary judgment, Plaintiff argues that the officers who attended to his condition were incompetent because they were not licensed physicians and that he was denied treatment by a physician for a period of several months. (Doc. #12 at 7-8.)

While Plaintiff has an interest in receiving medical care, he provides no support for the proposition that his condition required treatment by a physician as opposed to other licensed medical personnel. To demonstrate that the medical staff at his prison were incompetent, Plaintiff argues that a prison doctor referred to his scapula as a "lump" and erroneously indicated that it was not possible to dislocate this bone. (*Id.*) This does not state a viable claim under the Eighth Amendment. *See McGuckin*, 974 F.2d at 1060 (isolated instances of negligence do not amount to deliberate indifference). Plaintiff also questions the abilities of his orthopedic specialist since the doctor did not order surgery, an MRI study, or painkillers. This allegation also fails state a viable Eighth Amendment claim. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (difference of opinion regarding appropriate course of medical treatment does not amount to deliberate indifference to serious medical needs).

The court reaches a somewhat different conclusion regarding Plaintiff's allegation that he was denied treatment for his condition between September 2006 and April 2007. (*Id.* at 16.) A nurse initially referred Plaintiff to the prison doctor for the treatment of his pain on

7

September 14, 2006. (Doc. #13 at 13.) On three later occasions, Plaintiff's appointment with the doctor was cancelled for administrative reasons. During the period between October and December of 2006, Plaintiff filed a complete set of grievances attempting to obtain treatment for his shoulder pain.[2] (Doc. #10 at 22-25 [Grievance #2006-26-16793].) Plaintiff was not treated by a doctor until April 4th, 2007, when he was finally prescribed painkillers for his shoulder. Plaintiff subsequently received a referral to an orthopedic specialist, which occurred on May 11, 2007.

It is disputable whether the delay in treatment between September 2006 and April 2007 was purposeful in nature. Defendants made various unsuccessful attempts to have Plaintiff seen by a doctor from October through November of 2006, which would suggest a good faith attempt to treat the condition. However, there is nothing in the record to explain why the appointment was delayed until the following spring. Plaintiff filed a set of grievances relating to this issue, but possibly because the form combined complaints about both of his conditions, the grievance responder failed to address Plaintiff's requests regarding his shoulder. (Doc. #10 at 2.) This might suggest mere negligence, but the continued delay in rescheduling Plaintiff's doctor appointment is not addressed by the evidence submitted by either party. This conduct might have unnecessarily caused Plaintiff to endure constant shoulder pain for several months with no legitimate penological purpose. *See Estelle*, 429 U.S. at 107. Because material issues in connection with the delay in treatment remain at this stage of the proceedings, the cross-motions for summary judgment should be denied.

**2.    OFFICIAL CAPACITY IMMUNITY**

The Eleventh Amendment bars federal courts from hearing suits brought against an unconsenting state. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). This immunity

---

[2] In these grievances, Plaintiff alleges that he had been referred to both ENT and orthopedic specialists. (Doc. #10 at 23.) The record indicates, however, that he was only referred to a prison *doctor* for his shoulder pain on September 14, 2006. (Doc. #10 at 14.) In any case, the grievance responder appeared to completely overlook the portions of Plaintiff's grievances relating to his shoulder, addressing only the ENT condition. *See* Doc. #10 at 22 [printout of grievance responses].

extends to state agencies administering prisons. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The Eleventh Amendment bar also extends to a federal court action for damages (or other retroactive relief) brought by a citizen against a state official acting in his official capacity. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 664 (1974)). It will not, however, bar claims against the officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Plaintiff names Defendants Bannister, Scardin, and Neven in both their official and personal capacities. Therefore, the motion for summary judgment should be granted dismissing the claims against them for money damages in their official capacity.

3. **QUALIFIED IMMUNITY**

"Qualified immunity protects government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007). Under certain circumstances, state officials are entitled to qualified immunity when sued in their personal capacities. *Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 879 (9th Cir. 2002). When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay,* 272 F.3d 1207, 1214 (9th Cir. 2001). Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In analyzing whether the defendant is entitled to qualified immunity, the court must consider two issues. First, the court must make a threshold inquiry into whether the plaintiff alleges a deprivation of a constitutional right, assuming the truth of his factual allegations. *Hope v. Pelzer*, 536 U.S. 730, 736 (2000); *Saucier,* 533 U.S. at 201. The court finds that an Eighth Amendment claim is presented under the facts alleged by Plaintiff.

/ / /

If a constitutional violation did occur assuming the factual allegations, then the court must determine whether the right was recognized at the time of the alleged violation such that the Defendants could have reasonably believed that their conduct was appropriate. *Saucier*, 533 U.S. at 202. Defendants argue only that "it would not be clear to a reasonable officer that Plaintiff's medical care was either unlawful or a constitutional violation" but do not explain why. Doc. #13 at 7. Defendants also make a general reference to the case law cited in their motion to support the proposition that their conduct comported with the Eighth Amendment. They neither identify the cases nor explain how they lead to this conclusion. Accordingly, the motion for summary judgment on this basis should be denied.

## **MOTION FOR PRELIMINARY INJUNCTION/TRO**
### **A. LEGAL STANDARD**

Plaintiff has moved for a temporary restraining order or preliminary injunction in the alternative. A temporary restraining order is available when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. Fed. R. Civ. P. 65(b) (motion for preliminary injunction shall be set for hearing at earliest possible time after entry of temporary restraining order). Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n. 2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981).

The Ninth Circuit uses two alternative tests to determine whether a temporary restraining order should issue. According to the "traditional test," the equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs; and (4) advancement of the public interest. *Textile Unlimited, Inc. v. A. BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir.2001) (citing *Los Angeles Mem'l Coliseum Comm 'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir.1980)). In

the alternative, the Ninth Circuit uses a "sliding scale" or balancing test where injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001) (citing *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir.2000)).

Under the Prison Litigation Reform Act (PLRA), prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) ... operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

## B. DISCUSSION

**1.   LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiff is seeking an injunction to obtain additional medical treatment for his ENT and shoulder conditions. Regarding his ENT condition, there are two deficiencies with Plaintiff's claim that are discussed above. First, given Plaintiff's delays in contacting prison officials when his prescribed medication did not arrive, it is unclear whether Plaintiff suffered from an ongoing or intermittent ailment, which would affect whether the harms he alleges were sufficiently "serious" to state a constitutional claim. Second, Plaintiff does not offer a "strong" possibility that he could prove that Defendants were more than negligent in delaying the requested medication for his ENT condition. *See Textile Unlimited*, 240 F.3d at 786.

11

Similarly, Plaintiff's claims with respect to his shoulder do not demonstrate a strong likelihood of success on the merits. As discussed above, while the delay in the doctor's appointment for the shoulder treatment was problematic, it is debatable whether this amounted to the "unnecessary and wanton infliction of pain" that the Eighth Amendment proscribes. Defendants initially made a good faith effort to have Plaintiff seen by a doctor during the last three months of 2006, but the cause of the subsequent delay in providing treatment is unclear. Therefore, the court finds that Plaintiff has failed to establish a likelihood of success on the merits of his shoulder injury claim as well.

**2.  IRREPARABLE INJURY**

Plaintiff must also demonstrate irreparable injury if the injunction is not issued. *See Beardslee*, 395 F.3d 1064, 1067 (9th Cir. 2005), *cert. denied*, 543 U.S. 1096 (2005). Plaintiff fails to make this showing. At this point in the proceedings, despite delays in treatment, Plaintiff has been seen by specialists for both of his conditions and received a generic version of the ENT medication he was originally prescribed. *See* Doc. #12, Ex. #1 [Plaintiff's Exhibit "I"]. Although Plaintiff contends that he may lose the use of his shoulder blade or hearing if the requested relief is not granted, he fails to allege a factual basis for these grim possibilities. Nothing in the record indicates that the doctors who examined Plaintiff reached a similar conclusion regarding his various ailments. The court finds that Plaintiff has failed to establish a probability of irreparable injury if the motion is denied.

**3.  BALANCE OF HARDSHIPS**

Finally, the balance of hardships favors Defendants. There is no apparent irreparable harm that will befall Plaintiff absent an injunction, as he has already been seen by medical specialists for both of his conditions. Should the court grant injunctive relief, however, Defendants argue that it would require a substantial expenditure of resources to arrange for a referral and transport Plaintiff outside of the institution for his appointments. Accordingly, the court finds that Plaintiff has not demonstrated that the hardships tip in his favor.

/ / /

Because the balance of factors for evaluating an injunction do not favor granting relief, the motion should be denied. Additionally, Plaintiff has not demonstrated a possibility of irreparable injury as a result of not granting the motion, and hence the motion for a temporary restraining order should also be denied. *See* Fed. R. Civ. P. 65(b).

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING IN PART** Defendant's motion for summary judgment (Doc. #13) on Counts 1 and 2 of the complaint and **GRANTING IN PART** the motion for summary judgment dismissing the claims against Defendants Bannister, Scardin, and Neven in their official capacities for money damages.

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's motion for summary judgment (Doc. #12.)

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING** the motion for preliminary injunction or temporary restraining order (Doc. #10).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: February 10, 2009.

_____
UNITED STATES MAGISTRATE JUDGE