1

2

3

4

5

6               **UNITED STATES DISTRICT COURT**
                     **DISTRICT OF NEVADA**

7
  DARREN A. LUNFORD,                  )        3:08-CV-233-ECR (RAM)
8                                      )
            Plaintiff,                 )        **REPORT AND RECOMMENDATION**
9                                      )        **OF U.S. MAGISTRATE JUDGE**
        vs.                            )
10                                     )
   BRUCE BANNISTER, CHUCK              )
11 SCARDIN, D.W. NEVEN, GARY           )
   GRAHAM, AND DR. WULFF,              )
12                                     )
            Defendants.                )
13                                     )

14         This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior

15 United States District Judge.  The action was referred to the undersigned Magistrate Judge

16 pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before the

17 court is Defendants' Motion for Summary Judgment. (Doc. #37.)[1] Plaintiff has opposed (Doc.

18 #39), and Defendants have replied (Doc. #40). After a thorough review, the court recommends

19 that Defendants' Motion for Summary Judgment be granted, in part, and denied, in part.

20                               **I. BACKGROUND**

21         At all relevant times, Plaintiff Darren A. Lunford was an inmate in custody of the Nevada

22 Department of Corrections (NDOC) at High Desert State Prison. (Pl.'s Compl. 1 (Doc. #4) .)

23 Defendant Bannister is named as the Medical Director of NDOC, Defendant Scardin as the

24 "Chief of medical fiscal services," Defendant Neven as the Warden of Operations, and

25 Defendants Graham and Wulff as treating physicians. (*Id.* at 2-3.) Plaintiff, a *pro se* litigant,

26 brings this action pursuant to 42 U.S.C. § 1983 based on delayed medical care he received while

27

28         [1] Refers to court's docket number.

1  at High Desert State Prison.  (*Id*. at 3.)  Plaintiff seeks declaratory relief, injunctive relief,

2  compensatory damages, and punitive damages.  (*Id*. at 9.)

3          In Count I, Plaintiff alleges Defendants denied him prescribed medication and an

4  appointment with an ear, nose, and throat (ENT) specialist in violation of the Eighth

5  Amendment.  (*Id*. at 4-6.)

6          In Count II, Plaintiff claims Defendants improperly treated his shoulder injury in

7  violation of the Eighth Amendment.  (*Id*. at 7-10.)

8          On March 12, 2009, this court denied, in part, and granted, in part, Defendants' Motion

9  for Summary Judgment. (Doc. #27)(order adopting Report and Recommendation (Doc. #20).)

10  Defendants' Motion (Doc. #13) was denied as to Counts I and II and granted as to the claims

11  asserted against Defendants Bannister, Scardin, and Nevin in their official capacities for money

12  damages.  (Doc. #27 at 2.)  The court also denied Plaintiff's Motion for Summary Judgment

13  (Doc. #12) on March 12, 2009.  (Doc. #27 at 2.) On May 24, 2009, the court dismissed

14  Defendant Wulff without prejudice.  (Doc. #33.)  The instant motion before the court is

15  Defendants' second motion for summary judgment.

16                                    **II. LEGAL STANDARD**

17          The purpose of summary judgment is to avoid unnecessary trials when there is no

18  dispute over the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

19  1468, 1471 (9th Cir. 1994).  All reasonable inferences are drawn in favor of the non-moving

20  party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*,

21  477 U.S. 242, 244 (1986)).  Summary judgment is appropriate if "the pleadings, the discovery

22  and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

23  material fact and that the movant is entitled to judgment as a matter of law."  *Id*. (citing

24  Fed.R.Civ.P. 56(c)).  Where reasonable minds could differ on the material facts at issue,

25  however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441

26  (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  In deciding whether to grant summary

27  judgment, the court must view all evidence and any inferences arising from the evidence in the

28                                              2

light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of

1   the defendant's responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

2   1992). A "serious" medical need exists if the failure to treat a prisoner's condition could lead

3   to further injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S.

4   at 104). Examples of conditions that are "serious" in nature include an injury that a reasonable

5   doctor or patient would find important and worthy of comment or treatment, a medical

6   condition that significantly affects an individual's daily activities, or the existence of chronic

7   and substantial pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131

8   (9th Cir. 2000).

9         If the medical needs are serious, the plaintiff must show that the defendants acted with

10  deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a

11  high legal standard." *Tougchi v. Soon Hwang Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

12  The plaintiff must demonstrate that the prison medical staff knew of and disregarded an

13  excessive risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate

14  indifference entails something more than medical malpractice or even gross negligence.

15  *Tougchi*, 391 F.3d at 1061. Inadvertence, by itself, is insufficient to establish a cause of action

16  under § 1983. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other*

17  *grounds*, *WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 136 (9th Cir. 1997). Instead, deliberate

18  indifference is only present when a prison official "knows of and disregards an excessive risk"

19  to an inmate's health and safety. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2003)

20  (quoting *Farmer v. Brennan*, 511 U.S. 825, 858 (1994)). "Prison officials are deliberately

21  indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally

22  interfere with medical treatment" or the express orders of a prisoner's prior physician for

23  reasons unrelated to the medical needs of the prisoner. *Hamilton v. Endell,* 981 F.2d 1062,

24  1066 (9th Cir. 1992); *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (citations

25  omitted). Where delay in receiving medical treatment is alleged, however, a prisoner must

26  demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

27  ///

28                                          4

**A.    Count I**

Plaintiff alleges a fifteen-month denial of medication and an appointment with an ENT specialist that were originally prescribed on January 31, 2007.  Plaintiff was seen by a specialist and received medication in May 2008. (Pl.'s Opp. to Summ. J. 2 (Doc. #39); Pl.'s Mot. for Summ. J. 6 (Doc. #12).)

Defendants argue that Plaintiff fails to demonstrate a serious medical need and fails to show that Defendants acted with deliberate indifference. (Defs.' Mot. for Summ. J. 20-21 (Doc. #37.)

On January 31, 2007, Plaintiff was evaluated by Dr. Mumford.  (*Id.*, Ex. A at 5.)  Dr. Mumford prescribed Antivert and referred plaintiff to an ENT specialist.  (*Id.*)  On March 28, 2007, Plaintiff filed an informal grievance stating that he had not received his medication. (*Id.*, Ex. B.)  On April, 5, 2007, a prison official responded to Plaintiff by explaining that Antivert was not in stock at the pharmacy, apologizing that Plaintiff had not received it, and stating that he would receive the medication soon.  (*Id.*)  Plaintiff received the same response from prison officials on May 17, 2007 at the first level of review.  (*Id.*)  On May 30, 2007, Defendant Bannister stated at the second level of review that he believed Plaintiff received reasonable and honest answers at the informal and first level of the grievance process.  (*Id.*)  Defendant Bannister advised Plaintiff to contact medical if he continued to have serious problems.  (*Id.*) Plaintiff was transferred to a different prison in January 2008, and he wrote to Defendant Bannister in February 2008 regarding his ENT condition.  (Pl.'s Mot. for Prelim. Inj., Ex. C (Doc. #10).)  Plaintiff was finally seen by an ENT specialist and prescribed an alternative medication in May 2008.  (Pl.'s Mot. for Summ. J. at 6.)

Plaintiff was evaluated by Defendant Graham twice in April 2007 for another ailment. (Defs.' Mot. for Summ. J., Ex. A at 5-6.)  Plaintiff did not mention his ENT condition on either of these occasions.  (*Id.*)

Defendants, in large part, assert the same arguments in the instant motion as they asserted in their first motion for summary judgment.  Although Defendants present a more

5

1  thorough recitation of the facts and provide a more comprehensive argument, they still fail to

2  show the absence of a genuine issue of material fact.  In denying Defendants' first motion for

3  summary judgment, the court concluded that whether Plaintiff's medical condition subsided

4  during the period his treatment was delayed raised a genuine issue of material fact as to

5  whether the prison officials were deliberately indifferent to a serious medical need. (Doc. #27

6  at 1.) Specifically, the court found that Defendants failed to offer an explanation for the delay

7  in providing Plaintiff treatment. (Doc. #20 at 7.) Moreover, the court found that Defendants

8  failed to offer any evidence that Plaintiff was not harmed as a result of the delay in treatment.

9  (*Id.*)

10  　　　　Defendants argue, as they did in their first motion for summary judgment, that Plaintiff

11  cannot demonstrate that his ENT condition is "serious" because he did not seek additional

12  treatment for his ENT condition after being prescribed Antivert and being referred to an ENT

13  specialist on January 31, 2007. (Defs.' Mot. for Summ. J. 20-21.)  Defendants contend that

14  Plaintiff's failure to mention any ENT issues at two medical appointments in April indicate that

15  his ENT condition was not serious. (*Id.*)  Additionally, Defendants assert that Plaintiff made

16  no mention of the prescribed medication or his ENT condition even after receiving a grievance

17  response in May 2007 directing him to contact medical if he was having any serious problems.

18  (*Id.*)

19  　　　　First, sufficient evidence exists to create a genuine issue of material fact with regard to

20  whether Plaintiff's ENT condition is a "serious" medical need.  A "serious" medical need exists

21  if the failure to treat a prisoner's condition could lead to further injury or the "unnecessary and

22  wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing

23  *Estelle*, 429 U.S. at 104).  Examples of conditions that are "serious" in nature include an injury

24  that a reasonable doctor or patient would find important and worthy of comment or treatment,

25  a medical condition that significantly affects an individual's daily activities, or the existence of

26  chronic and substantial pain. *McGuckin*, 974 F.2d at 1060.  Plaintiff's ENT condition was

27  worthy of comment and treatment by a doctor on January 31, 2007 and in May 2008.  Plaintiff

28  　　　　　　　　　　　　　　　　　　　　　6

1  commented on his ENT condition and lack of medication from March 2007 to May 2007 in his

2  grievances. Although Plaintiff did not seek additional treatment from May 2007 until February

3  2008, Plaintiff stated in his February 2008 letter that he has suffered from his ENT condition

4  over the last year and a half.  (Pl.'s Mot. for Prelim. Inj., Ex. C.)  Thus, a factual issue exists as

5  to whether Plaintiff's ENT condition subsided between May 2007 and February 2008 or

6  whether it remained a "serious" medical need.

7         Second, a genuine issue of material fact exists as to whether Defendants acted with

8  deliberate indifference.  To refute Plaintiff's allegation of Defendants' deliberate indifference,

9  Defendants submit an affidavit from Karen L. Walsh, the Health Information Director for the

10  State of Nevada, Nevada Department of Corrections.  (Defs.' Mot. for Summ. J., Ex. A.)  Ms.

11  Walsh states that "any delay of Antivert medication, or a generic form of such medication, was

12  not in order to inflict pain or harm to Plaintiff for pain's sake."  (*Id.*, Ex. A at 6.)  However,

13  Plaintiff submits his own affidavit in which he asserts that he never received Antivert "and at

14  this present day in time ... continue[s] to suffer from [his] ENT condition."  (Pl.'s Opp. to

15  Summ. J. 15 (Doc. #39.)  Therefore, as with their first motion for summary judgment,

16  Defendants' instant motion fails to explain the delay of over fourteen months in providing

17  Plaintiff treatment and fails to show that Plaintiff did not suffer harm as a result of the delay.

18  **B.    Count II**

19         Plaintiff alleges three deficiencies with the treatment for his shoulder injury.  First, he

20  claims that the treatment rendered by Defendant Graham and other medical staff at the prison

21  has been insufficient and has exacerbated his condition.  Second, he alleges that he was referred

22  to a doctor in September 2006, but that the appointment was delayed for an eighth-month

23  period until April 2007.  Third, Plaintiff challenges the care provided by his orthopedic

24  specialist, Defendant Wulff, because the doctor did not believe that surgery was necessary and

25  that therapeutic exercises would be sufficient to cure the condition.  Plaintiff alleges that he is

26  in need of a magnetic resonance image (MRI) of the affected area, painkillers, and surgery.

27  (Pl.'s Opp. to Summ. J. 2, 9-13.)

28                                          7

1    Defendants argue that Plaintiff fails to show that Defendants acted with deliberate

2 indifference in treating his shoulder. (Defs.' Mot. for Summ. J. 21.)

3    Plaintiff received treatment for his shoulder on several occasions between May 2006 and

4 September 2006. (*Id.*, Ex. A at 3-4.) On September 14, 2006, Plaintiff was evaluated by a

5 nurse who referred Plaintiff to the prison doctor for the treatment of his shoulder pain. (*Id.*,

6 Ex. A at 4.) On October 4, November 8, and November 22, 2006, Plaintiff's appointment with

7 the doctor was cancelled for administrative reasons. (*Id.*) Between October and December

8 2006, Plaintiff filed grievances attempting to obtain treatment for his shoulder pain. (Pl.'s

9 Mot. for Prelim. Inj., Ex. B (Grievance Printout for # 2006-26-16793).) Plaintiff was seen by

10 a doctor on January 31, 2007, but did not mention his shoulder injury. (Defs.' Mot. for Summ.

11 J., Ex. A at 4.) Plaintiff was also treated by a doctor on April 4, 2007. (*Id.* at 4-5.) On this

12 occasion, Plaintiff mentioned that his shoulder injury was re-injured in March 2007 and was

13 prescribed painkillers for his shoulder. (*Id.*)

14    In denying Defendants' first motion for summary judgment, the court concluded that

15 Plaintiff failed to state Eighth Amendment claims insofar as he as claimed (1) that his condition

16 required treatment by a physician as opposed to other licensed medical personnel, and (2) a

17 difference of opinion regarding the appropriate court of medical treatment for his shoulder.

18 (Doc. #20 at 7.) However, the court concluded that it is "disputable" as to whether Defendants'

19 delay in proving Plaintiff treatment for his shoulder was purposeful or not. (Doc. #27 at 2.)

20 Despite Defendants' contention that the delay in treatment was a result of administrative or

21 transport reasons, the court found that the delay in rescheduling Plaintiff's doctor appointment

22 might have unnecessarily caused Plaintiff to endure constant shoulder pain for several months

23 with no legitimate penological purpose. (*Id.*)

24    In their instant motion, Defendants argue that Plaintiff's appointments were delayed

25 because there were no officers available to transport Plaintiff to the appointment. (Defs.' Mot.

26 for Summ. J. 22.) According to Defendants, rescheduling Plaintiff's appointments was done

27 to preserve the "safety and security of the institution when there are no officers to transport

28                                                          8

1    Plaintiff" and not "to inflict unnecessary pain on Plaintiff." (*Id.*)

2        A genuine issue of material fact exists as to whether Defendants were deliberately

3 indifferent to Plaintiff's shoulder injury.  Despite Defendants' assertion that Plaintiff's

4 appointment was delayed because of safety and security reasons, the fact remains that

5 Plaintiff's referral to see a doctor was delayed by at least four months from September 2006

6 until January 2007.  Plaintiff asserts in his affidavit that he was denied pain killers during that

7 time and was in extreme pain.  (Pl.'s Opp. to Summ. J. 15.)  Thus, the delay in treatment may

8 have unnecessarily caused Plaintiff to endure constant shoulder pain.  In some instances, it

9 may be important to balance the "competing tensions" between "the prisoners' need for

10 medical attention and the government's need to maintain order and discipline," in assessing

11 the prison officials' subjective intent.  *Clement v. Gomez*, 298 F.3d 898, 905 n.4 (9th Cir.

12 2002).  However, "[i]n deciding whether there has been deliberate indifference to an inmate's

13 serious medical needs, [a court] need not defer to the judgment of prison doctors or

14 administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).  Defendants may be

15 able to show that pressing safety and security needs may have necessitated the delay in

16 Plaintiff's doctor's appointment. *See Clement*, 298 F.3d at 905 n.4 (noting that the four-hour

17 delay in medical attention following a violent prison fight may have been necessitated due to

18 the potential for violence and may impact the evaluation of whether the prison official has the

19 requisite subjective intent.) On the current record, however, a factual issue exists as to whether

20 Defendants unnecessarily delayed Plaintiff's treatment for at least four months and caused him

21 further harm.

22 **C.   Qualified Immunity**

23        Defendants argue they are entitled to qualified immunity because Plaintiff cannot

24 demonstrate any unlawful conduct by Defendants.  (Defs.' Mot. for Summ. J. at 9.)  Even if

25 Plaintiff establishes a constitutional deprivation, Defendants contend that it would not be clear

26 to reasonable officers that Plaintiff's medical care was either unlawful or a constitutional

27 violation. (*Id.*)

28                                           9

1    "[Q]ualified immunity protects government officials from liability for civil damages

2    insofar as their conduct does not violate clearly established statutory or constitutional rights

3    of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815

4    (2009)(citation and internal quotations omitted).  Under certain circumstances, state officials

5    are entitled to qualified immunity when sued in their personal capacities.  *Carey v. Nev.*

6    *Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002).  When a state official reasonably

7    believes his or her acts were lawful in light of clearly established law and the information they

8    possessed, the official may claim qualified immunity.  *Hunter v. Bryant*, 502 U.S. 224, 227

9    (1991) (per curiam); *Orin v. Barclay,* 272 F.3d 1207, 1214 (9th Cir. 2001).  Where "the law did

10   not put the officer on notice that his conduct would be clearly unlawful, summary judgment

11   based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

12          In analyzing whether the defendant is entitled to qualified immunity, the court must

13   consider two issues.  The court must determine whether the plaintiff alleges a deprivation of

14   a constitutional right, assuming the truth of his factual allegations, and whether the right at

15   issue was "clearly established" at the time of defendant's alleges misconduct.   *Clouthier v.*

16   *County of Contra Costa*, 2010 U.S. App. LEXIS 884, *13 (9th Cir. Jan. 14, 2010)(quoting

17   *Pearson*, 129 S. Ct. at 816). "Whether a right is clearly established turns on the 'objective legal

18   reasonableness of the action, assessed in light of the legal rules that were clearly established

19   at the time it was taken.'" (*Id.*)(quoting *Pearson*, 129 S. Ct. at 822).

20          The court finds that an Eighth Amendment claim is presented under the facts alleged

21   by Plaintiff.

22          In denying Defendants' first motion for summary judgment, the court found that

23   Defendants failed to explain why it would not be clear to a reasonable officer that Plaintiff's

24   medical care was either unlawful or a constitutional violation.  (Doc. #20 at 10.)  In their

25   instant motion for summary judgment, Defendants contend that Plaintiff's failure to seek

26   follow-up treatment after January 31, 2007 for his ENT condition, and failure to mention his

27   ENT condition at his two appointment in April demonstrates that Defendants could reasonably

28                                                    10

1   assume that Plaintiff's medical care was not a violation of Plaintiff's constitutional rights.

2   (Defs.' Mot. for Summ. J. 10-11.)  With regard to Plaintiff's shoulder injury, Defendants argue

3   that it would not have been clear to Defendants that not being able to transport Plaintiff to his

4   appointments because there were no officers available was a violation of Plaintiff's rights. (*Id*.

5   at 12.)

6       The determination of whether the rights of prisoners were clearly established at the time

7   of an incident "must be taken in light of the specific context of the case." *Saucier v. Katz*, 533

8   U.S. 194, 201 (2001).  To be clearly established, "[t]he contours of the right must be sufficiently

9   clear that a reasonable official would understand that what [the official] is doing violates the

10  right." *CarePartners LLC v. Lashway*, 545 F.3d 867, 882 (9th Cir. 2008)(quoting *Saucier*, 533

11  U.S. at 202)**.**

12      The general law regarding the medical treatment of prisoners was clearly established at

13  the time periods in question in this case.  *See Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir.

14  2002).  Moreover, the law prohibiting officers from intentionally denying or delaying access

15  to medical care was also clearly established.  *See Estelle*, 429 U.S. at 104-05.

16      Upon resolution of factual issues, prison officials may be relieved of any liability in this

17  case.  However, if Plaintiff's version of the facts were to prevail at trial, a jury might conclude

18  that the prison officials were deliberately indifferent in delaying Plaintiff's receipt of medication

19  and a referral to a specialist for his ENT condition and delaying Plaintiff's doctor appointment

20  for his shoulder injury.  Under such circumstances, the prison officials' actions are not

21  protected by qualified immunity.  Thus, summary judgment is inappropriate as to Count I and

22  Count II.

23  **D.    Personal Participation**

24      Defendants Neven and Scardin argue that they should be dismissed from this action

25  because Plaintiff fails to show that either personally participated in the alleged constitutional

26  violations. (Defs.' Mot. for Summ. J. 23-24.)

27      A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the

28                                          11

1  actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See*

2  *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The

3  Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional

4  right, within the meaning of §1983, if he does an affirmative act, participates in another's

5  affirmative acts or omits to perform an act which he is legally required to do that causes the

6  deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

7        In his motion for a preliminary injunction, Plaintiff submitted a letter he sent to

8  Defendant Neven dated May 28, 2007, in which he described the problems he was experiencing

9  in receiving treatment for his ENT and shoulder conditions. (Pl.'s Mot. for Prelim. Inj., Ex. C.)

10  On May 29, 2007, Defendant issued a memorandum to Plaintiff advising him that his

11  correspondence had been received and referred to LaVonne Atkins-St. Rose for a response.

12  (*Id.*)   Therefore, Plaintiff not only alleges Defendant Neven's participation but submits

13  evidence showing he actually corresponded with Defendant Neven regarding his medical care

14  issues.

15        As to Defendant Scardin, Plaintiff alleges that "Scardin and [Neven] refused to grant the

16  funds necessary to purchase [Antivert]." (Pl.'s Compl. 6.)  Plaintiff, however, fails to supply

17  more detailed allegations or evidence demonstrating that Defendant Scardin personally

18  participated in denying Plaintiff his medication.

19        Moreover, to the extent that Plaintiff has attempted to sue Defendant Scardin under a

20  theory of supervisory liability, Plaintiff has not alleged sufficient facts to state a claim.

21  Supervisory personnel are generally not liable under § 1983 for the actions of their employees

22  under a theory of respondeat superior.  When a named defendant holds a supervisory position,

23  the causal link between him and the claimed constitutional violation must be specifically

24  alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d

25  438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). Plaintiff must allege facts indicating

26  that a supervisory defendant either: personally participated in the alleged deprivation of

27  constitutional rights; knew of the violations and failed to act to prevent them; or promulgated

28                                                                12

1   or implemented a policy "so deficient that the policy itself is a repudiation of constitutional

2   rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d

3   642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff has

4   failed to allege any facts against Defendant Scardin to state a claim for a constitutional violation

5   or for supervisory liability. Therefore, Defendant Scardin should be dismissed from this action.

6                                            **IV. RECOMMENDATION**

7           **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order

8   **GRANTING IN PART and DENYING IN PART** Defendants' Motion for Summary

9   Judgment (Doc. #37) as follows:

10          •       The motion for summary judgment on Count I and II should be granted as to

11                  Defendant Scardin; and

12          •       The motion for summary judgment on Count I and II should be denied as to

13                  Defendant Bannister, Neven, and Graham.

14          The parties should be aware of the following:

15          1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

16   Local Rules of Practice, specific written objections to this Report and Recommendation within

17   fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate

18   Judge's Report and Recommendation" and should be accompanied by points and authorities

19   for consideration by the District Court.

20          2.      That this Report and Recommendation is not an appealable order and that any

21   notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

22   District Court's judgment.

23          DATED:  February 11, 2010.

24

25

26   _____

27   UNITED STATES MAGISTRATE JUDGE

28                                                 13